UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| PHILIP KACZOROWSKI, <br>     Plaintiff, <br><br> v. <br><br> TOWN OF NORTH SMITHFIELD, et al., <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 12-327-M |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This case presents the question of whether a town council can eliminate a Charter-mandated department director position. The answer to that question in this case is that it cannot.

Plaintiff Philip Kaczorowski filed this case against Defendants the Town of North Smithfield, Town Administrator Robert Lowe, and Town Council Members Linda Thibault, Edward Yazbak, and Paul Zwolenski in their individual and official capacities stemming from the Town Council's approval of a budget that eliminated the position he held as Director of the Department of Public Works. His Complaint contains six counts, including claims for violation of the Charter, age discrimination, due process and equal protection claims, and intentional infliction of emotional distress. Defendants move for summary judgment on each count. (ECF No. 12.) Mr. Kaczorowski objects to the Defendants' motion and moves for summary judgment on Counts I, IV and V. (ECF No. 16.)

I.  **FACTS**

Mr. Kaczorowski was the Director of the Department of Public Works ("DPW") for the Town of North Smithfield ("the Town") for over 16 years from December 1, 1989 through June 30, 2005. (ECF No. 18 at ¶1.) Mr. Kaczorowski was reappointed at the beginning of each election cycle throughout this period. (Id. at ¶2.) This lawsuit involves events beginning in January 2005 when newly-elected Town Administrator Robert Lowe reappointed Mr. Kaczorowski on January 5, 2005. (Id. at ¶3.) In his reappointment letter, Mr. Lowe "advised [Mr. Kaczorowski] that [his] status as Director of Public Works has been changed to permanent." (ECF No. 17-1 at 2.)

In June 2005, the North Smithfield Town Council ("the Town Council") met to address the Town budget for the upcoming fiscal year. (ECF No. 16 at 5.) Mr. Lowe submitted a preliminary budget in February of 2005 and a post-audit budget in June 2005. (ECF No. 18 at ¶ 4.) Council Member Edward Yazbak objected to Mr. Lowe's budget claiming it proposed a 6.5% to 7% tax increase. (ECF No. 16-4 at 40.) While the reason Mr. Yazbak took on the task is disputed, he ultimately prepared and presented a budget to the rest of the Town Council that reduced the proposed tax increase to 4%. (ECF No. 18 at ¶5.) In his proposed budget, Mr. Yazbak recommended several cuts to the Town's expenditures, specifically to the DPW's budget. (Id. at ¶6.) He proposed cutting the DPW's budget by eliminating the funding for the Director position and eliminating a laborer position. (Id. at ¶7.)[1]

The Town Council held a meeting on June 20, 2005 to discuss Mr. Yazbak's proposed budget. The Town Council tabled the budget proposal to give Town Administrator Lowe, who

---

[1] Mr. Yazbak's proposed budget also eliminated five positions in the school department, a firefighter position, and eliminating a proposed grant writer position. (ECF No. 18 at ¶9.)

was dissatisfied with the elimination of the DPW Director position, the chance to propose an alternative restructuring of the DPW that would preserve Mr. Yazbak's budget numbers. (*Id.* at ¶10.) Mr. Lowe met with Mr. Kaczorowski the next day to discuss the proposed cuts. (*Id.* at ¶11.) He asked Mr. Kaczorowski for alternatives to eliminating his position, suggesting the termination or retirement of the Director of the Highway Department. (*Id.*) Ultimately, Mr. Lowe, in considering alternatives, decided that he needed to retain the Highway Department Director because of his years of experience and expertise. (*Id.* at ¶12.) He further concluded that Mr. Kaczorowski's supervisory duties could be assumed by one of Mr. Kaczorowski's subordinates, Ray Pendergast, the Head of the Department of Parks and Recreation. (*Id.*)

On June 25, 2005, the Town Council received Mr. Lowe's recommendation and voted to approve the budget that eliminated the funding for the position of the DPW Director. (*Id.* at ¶14.) On June 27, 2005, Mr. Lowe forwarded Mr. Kaczorowski a letter advising him that, due to budgetary constraints, his services would no longer be needed. (*Id.* at ¶15.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure directs this Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue of fact exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 24 (1st Cir. 2009) (quoting *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009)). This Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

When there are cross motions for summary judgment "all facts, as well as reasonable inferences therefrom, are reviewed in the light most favorable to the respective non-moving parties." *Medeiros v. Vincent*, 431 F.3d 25, 29 (1st Cir. 2005). In other words, when there are cross motions, "each party's motion for summary judgment must be addressed by examining the facts and inferences in favor of the other party." *Berger v. R.I. Bd. of Governors for Higher Educ.*, 832 F. Supp. 515, 517 (D.R.I. 1993) (quoting *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991)).

## III. ANALYSIS

Before the Court gets to the controlling question of whether the Town Council violated the Town Charter by eliminating the position of the DPW Director, the Court will first consider the parties' motions on the other Counts.

### A. Constitutional Claims - Counts IV, V, and VI

Mr. Kaczorowski alleges that he had a property interest in his position as DPW Director giving rise to his allegation of a due process violation in Counts IV and V. He alleges in Count VI that Defendants treated him differently from similarly situated individuals such that they violated his right to equal protection. Before the Court engages in a complete analysis of the merits of Mr. Kaczorowski's federal constitutional claims, it is most expedient to consider Defendants' assertion of immunity from those claims, both legislative and qualified, in light of the summary judgment record.

1. **Legislative Immunity – Council Members**

Defendants argue that Messrs. Thibault, Yazbak, and Zwolenski[2] are entitled to legislative immunity because their roles in passing the budget that eliminated Mr. Kaczorowski's position was a legislative act protected from suit. Mr. Kaczorowski counters that these individuals were not acting as legislators, but as administrators, when they eliminated his position in a thinly disguised budgetary decision.

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). "The purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference." *Supreme Court of Va v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731 (1980). Because "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches[,]" *Forrester v. White*, 484 U.S. 219, 227 (1988), an individual's motive when conducting legislative activities is irrelevant. *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *Bogan*, 523 U.S. at 54 ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."). "Acts ... that are administrative in nature do not 'give rise to absolute immunity from liability in damages under § 1983.'" *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 28 (1st Cir. 1994) (quoting *Forrester*, 484 U.S. at 229); *see also Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 29 (1st Cir. 1996)

---

[2] Although these three Defendants were sued in both their individual and official capacities, that distinction has no bearing on the applicability of legislative immunity. Legislative "immunity is absolute when such officials are sued for performing legislative actions, and its availability does not turn on whether they are named as parties in an individual or official capacity." *Maynard v. Beck*, 741 A.2d 866, 871 (R.I. 1999).

The Supreme Court has determined that voting for legislation, introducing budgets, and signing ordinances into law are "quintessentially legislative" functions. *Bogan*, 523 U.S. at 55. While employment decisions, however, generally are administrative in nature, when those decisions are made in the context of a "quintessentially legislative" function such as passing a budget, they become legislative. *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000) *See also Rateree v. Rockett*, 852 F.2d 946, 950 ("Almost all budget decisions have an effect on employment by either creating or eliminating positions or by raising or lowering salaries. This reality, however, does not transform a uniquely legislative function into an administrative one.").

Looking at the nature of the acts in question, Defendants Thibault, Yazbak, and Zwolenski were without a doubt performing legislative functions when they prepared and passed the North Smithfield budget that ultimately eliminated Mr. Kaczorowski's position. Despite Mr. Kaczorowski's assertions that they were acting in their personal interests, as opposed to acting as legislators when they eliminated his position, the Court cannot and should not consider the motive or intent of the official performing those acts in determining whether those acts are legislative or administrative. *Bogan*, 523 U.S. at 54. "[T]he fact remains that their alleged acts were committed in the course of performing their discretionary functions or duties as government officials in crafting and then presenting proposed municipal legislation [the budget] for its potential adoption by the town council. As a result, such activities are protected by legislative immunity." *See Maynard*, 741 A.2d at 870.

In light of the Court's determination that legislative immunity protects Defendants Thibault, Yazbak, and Zwolenski for their acts on the Town Council, the Court need not delve into the intricacies of Mr. Kaczorowski's constitutional claims against them. Therefore, their Motion for Summary Judgment of Counts IV, V, and VI is GRANTED.

### 2. Qualified Immunity – Town Administrator and the Town

The remaining two Defendants, Robert Lowe (in his individual and official capacities as the Town Administrator), and the Town of North Smithfield (by and through Jill Gemma in her official capacity as the Finance Director of the Town of North Smithfield) assert qualified immunity. "The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability. *** Indeed, '[t]he basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (citations omitted). The Court will first address the qualified immunity arguments as to Mr. Lowe and then turn to the Town itself.

#### a. Town Administrator - Mr. Robert Lowe

The Court must begin its analysis of the constitutional claims as to Mr. Lowe by "identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable [person] should have known that his actions were unlawful." *Morelli v. Webster*, 552 F.3d 12, 19 (1st Cir. 2009). The Supreme Court has set forth a two-part test to determine the applicability of qualified immunity; that is "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado*, 568 F.3d at 268-269 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The Court first must determine whether Mr. Kaczorowski had a constitutionally protected property interest in his job as DPW Director. Mr. Lowe argues that because Mr. Kaczorowski served at the pleasure of the Town Administrator, he had no property interest in his job. Mr. Kaczorowski points both to the Charter language establishing that his employment term ran

concurrently with that of the Town Council and to the Town Administrator's letter indicating that his job was permanent.

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the United States Supreme Court considered what constituted a protected property interest in employment and held that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined * * * [and that property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577. "A property interest in employment can ... be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Our circuit law is consistent in finding that "[a] property interest has been found where, by statute, rules, or contract the employee can be fired only for cause[,]" and "[a] constitutionally protected property interest has not been recognized where the employee serves at the will and pleasure of the public employer." *Ventetuolo v. Burke*, 596 F.2d 476, 481 (1st Cir. 1979) (citations omitted.)

As grounds for his assertion that he had a legitimate claim of entitlement to his job, Mr. Kaczorowski relies on two Charter provisions - Charter Article XVI, § 3(3) and Article V, § 6(1). Section 3(3) states that "[t]he terms of office of all officers, members of boards, commissions and committees of the town appointed with the approval of or elected by the town council shall be concurrent with the terms of the town council unless otherwise provided in this chapter." Charter Article XVI, § 3(3). This section, Mr. Kaczorowski argues, assures him a

term of employment concurrent with the term of the Town Council. He also relies on § 6(1), which gives the Town Administrator the power to "(1) [a]ppoint and remove *for cause* any officer or employee of the town, except as otherwise provided by this charter, and except as he may authorize the head of a department or office to appoint and remove subordinates in such departments or office." Charter Article V, § 6(1) (emphasis added).

Mr. Lowe argues that the "concurrent" provision of § 3(3) of the Charter does not apply to Mr. Kaczorowski because he was not an "officer," but rather a department head who was not appointed by the Town Council, but by the Town Administrator. Moreover, Mr. Lowe asserts because Ordinance § 2.33 provides that an employee serves at the pleasure[3] of his/her manager, Mr. Kaczorowski was an at-will employee and therefore did not have a property interest in his employment.

The key in this analysis is Charter § 6(1)'s reference that an employee can be removed for cause, "except as otherwise provided by this charter." "[T]he general principle is that when public employees *only* can be dismissed for cause[,] they have been given a property interest in their employment." *Joslyn v. Kinch*, 613 F. Supp. 1168, 1178 (D.R.I. 1985) (emphasis added). "It is 'that type of cause which in law constitutes a valid ground for the exercise of the power to remove,' and entitles the petitioner 'to a specification of charges, due notice of a hearing, and an opportunity to be heard and offer evidence in defense or explanation.'" *Kells v. Town of Lincoln*, 874 A.2d 204, 212 (R.I. 2005) (quoting *Davis v. Cousineau*, 196 A.2d 153, 156 (1963)). The

---

[3] Mr. Kaczorowski's argument construes the term "pleasure" as though it relates to the degree of satisfaction the appointing authority has with the work of the director in question. The Rhode Island Supreme Court "construe[s] the words 'at the pleasure' to mean that the town manager may remove [a town employee] for any reason except one that violates the constitution." *Montaquila v. St. Cyr*, 433 A.2d 206, 213 (R.I. 1981). When put in context of the rest of the ordinance, this phrase appears to authorize the appointing authority to remove the department head in question for whatever non-discriminatory reason he or she may have to do so.

Court does not see, nor does either party reference, any Charter provision that is inconsistent with or that drives a different interpretation of the "for cause" section. Moreover, § 6(1) does not defer to any conflicting ordinance language, such as Section 2.33, and as the Court discusses more completely in Section III.B.1, charter provisions nevertheless trump conflicting ordinances. *Borromeo v. Pers. Bd. of Town of Bristol*, 367 A.2d 711, 713 (1977) ("ordinances that are inconsistent with provisions of the charter are illegal and inferior to the provisions of the charter.") In this case, therefore, it appears that the enumerated North Smithfield employees could only be dismissed for cause and therefore, Mr. Kaczorowski had a property interest in his employment.

The Court's next inquiry is whether, in light of this property interest, Mr. Kaczorowski's claimed right to employment was clearly established. However, even an affirmative answer to that question may still not be enough to overcome qualified immunity. The First Circuit in *Diaz-Bigio v. Santini* recently confirmed that:

> Immunity exists even where the abstract 'right' invoked by the plaintiff is well-established, so long as the official could reasonably have believed 'on the facts' that no violation existed. Although the Supreme Court has made clear that municipal officers can "be on notice that their conduct violates established law even in novel factual circumstances," it has also stressed that qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" A right is clearly established and immunity will not issue only if "*every* 'reasonable official would have understood that what he is doing violates that right.'" If "officers of reasonable competence could disagree" on the lawfulness of the action, they are entitled to immunity.

*Diaz-Bigio v. Santini*, 652 F.3d 45, 50-51 (1st Cir. 2011) (internal citations omitted.)

It is clear from the record that Mr. Lowe did not believe that, by following the budgetary process initiated and controlled by the Town Council, he was violating Mr. Kaczorowski's rights. This is evidenced by the undisputed fact that Mr. Lowe, upon learning that the Town Council's proposed budget eliminated the DPW Director position, engaged Mr. Kaczorowski in

10

an effort to make alternative cuts to the DPW budget, including terminating another director. (ECF No. 18 at ¶11.) Moreover, even if Mr. Lowe was aware that Mr. Kaczorowski had a property right in his job by virtue of the Charter provisions, because of the competing and conflicting language of the Charter and Town Ordinances, the Court finds that persons of "reasonable competence could disagree" on whether they were violating Mr. Kaczorowski's constitutional rights. Therefore, the Court finds that Mr. Lowe is immune from liability and GRANTS his Motion for Summary Judgment of Counts IV, V, and VI.

### b. The Town of North Smithfield

In light of the determination of the claims against the individual Defendants, the Court now turns to Mr. Kaczorowski's constitutional claims against the Town of North Smithfield.

"Municipalities cannot assert qualified immunity." *Wilson v. City of Boston*, 421 F.3d 45, 59 (1st Cir. 2005) (citing *Owen v. City of Independence*, 445 U.S. 622, 650 (1980). Therefore, the Court must analyze Mr. Kaczorowski's claim against the Town in the context of the well-established law of municipal liability.

"[A] municipality may be liable under § 1983 where a custom or practice is so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997)); *see also Monell v. Department of Social Serv.*, 436 U.S. 658, 694 (1978); *Walden v. City of Providence*, 596 F.3d 38, 57-58 (1st Cir. 2010). The policy or custom must be the "cause and moving force behind the deprivation of constitutional rights." *Bisbal–Ramos*, 467 F.3d at 24.

After reviewing the Complaint and summary judgment record in this case, Mr. Kaczorowski has failed to show that a well-settled and widespread policy or custom was established by the Town of North Smithfield that led to his termination and injuries. In fact, it is undisputed that Mr. Kaczorowski was brought into the budget process and made aware of the financial constraints in his department. (ECF No. 18 at ¶11.) The Complaint does allege misconduct by individuals, particularly Council Member Yazbak, harkening to liability under a *respondeat superior* theory, but the developed record fails to attribute any of his alleged misconduct to the Town government. *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013). Because a municipality cannot be held liable under a *respondeat superior* theory, *Monell*, 436 U.S. at 691, and Mr. Kaczorowski has failed to present to the Court any disputed material issues of fact on whether a Town of North Smithfield policy or custom caused his injuries, the Court GRANTS the Town's Motion for Summary Judgment of Counts IV, V, and VI against the Town itself.

### B. State Law Claims

What remains are Mr. Kaczorowski's state law claims[4] for violation of the North Smithfield Charter and age discrimination under R.I. Gen. Laws §§ 42-112-1 *et seq.*, the Rhode Island Civil Rights Act.

The Court must first address its jurisdiction over the state law claims.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

---

[4] The Court need not delve too deeply into Mr. Kaczorowski's Count III, intentional infliction of emotional distress state law claim because the qualified immunity defense is "well grounded in the law of Rhode Island." *Hatch v. Town of Middletown*, 311 F.3d 83, 90 (1st Cir. 2002) (discussing "recognition of a qualified immunity defense under state law analogous to the federal doctrine"); *J.R. v. Gloria*, 599 F. Supp. 2d 182, 205 (D.R.I. 2009) (qualified immunity also applies to state law negligence claims). Because Mr. Kaczorowski's claim under Count III is derivative of and arises from the constitutional claims and the individual Defendants' conduct, the Court dismisses Count III.

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367.[5] The Court finds that it is appropriate to exercise supplemental jurisdiction in this case. Mr. Kaczorowski's state law claims "form part of the same case or controversy" as the federal claims. Furthermore, unlike the *Houlton Citizens'* case, this case is not in the early stages of litigation, as the parties have undertaken all discovery and filed the instant dispositive motions. Moreover, upon reviewing the applicable case law both parties have ably presented and the particular facts of this case at the well-developed summary judgment stage, the Court does not find that this case presents such a novel or close question of state law such that this Court cannot retain jurisdiction over the remaining Counts I and II. The Court will now consider those Counts *seriatim*.

### 1. Violation of the Charter - Count I

"The provisions of a town charter are the organic law of the town with respect to municipal affairs." *Borromeo*, 367 A.2d at 713. The Town of North Smithfield Charter's Preamble supports this legal tenet: "[t]he people of the Town of North Smithfield, in order to secure the right of self-government in all local matters, pursuant to the provisions of the Constitution of the State of Rhode Island and Providence Plantations, do adopt and establish this charter." Charter, Preamble. The Charter, established by the people, gave the Town Council

---

[5] The First Circuit has addressed whether district courts should exercise supplemental jurisdiction over state law questions dealing with a town charter. *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 191-2 (1st Cir. 1999). In that case, the First Circuit found that the lower court should not have reached the town charter claim because the litigation was in the early stages and the claim was "not only difficult, but also novel as a matter of state law." *Id.* at 192. Such is not the case here. Moreover, no party has objected to the Court's exercise of supplemental jurisdiction.

certain powers to conduct the Town's business and specifically circumscribed those powers in certain circumstances. The Charter's language, as the dictate of the People, must be followed.

In Count I, Mr. Kaczorowski alleges that Defendants violated the Charter when they essentially eliminated the Charter-based requirement that there be a full-time DPW Director.[6] Article X, §1 of the North Smithfield Town Charter explicitly states that "[t]here *shall* be a department of public works, the head of which shall be a *full-time* director of public works . . . ." (Emphasis added.) Section 2 of Article X of the Charter establishes that the DPW shall be divided into at least four divisions, including the Parks and Recreation division, and that these divisions "shall be headed by the public works director or a person recommended by him and appointed by the town administrator." These two sections set up the basic structure of the DPW – that is, the DPW is a Charter-mandated department that must have a full-time director. Any changes to a Charter provision, unless specified otherwise in that document, must be made by amendment of the Charter. Charter, Article XVI, § 1 ("Amendments to this charter shall be made in the manner provided by the constitution of the state in article of amendment, Article XXVIII, section 8.")

Mr. Kaczorowski moves for summary judgment because he argues that it is undisputed that Defendants eliminated the position of a full-time DPW Director in violation of the charter mandate. Defendants argue that they are entitled to summary judgment because the two actions they took – passing a budget reducing the DPW Director's compensation to one dollar and

---

[6] As a preliminary matter, the Court raised during the hearing on these motions the issue of whether Mr. Kaczorowski has standing to pursue this claim under the Charter. Mr. Kaczorowski argues that he has standing to sue Defendants because he suffered an injury in the form of lost employment when Defendants eliminated his position. Defendants disagree, arguing that Mr. Kaczorowski's claims that they violated the Charter are not causally related to his job loss. The Court finds that Mr. Kaczorowski does assert specific injury, and therefore does have standing to pursue his claims against Defendants in this case.

informing Mr. Kaczorowski that his services were no longer needed – were appropriate and in accordance with the Town Council's powers set forth in the Charter.

"When a court is called upon to construe the provisions of a town charter, the rules of statutory construction apply." *Borromeo*, 367 A.2d at 713. "It is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question." *Carter v. City of Pawtucket*, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975). There are several different Charter and Ordinance provisions that the parties argue support their summary judgment motions on Count I. These are Charter Article IV, §§ 6 and 8, Charter Article X, §§ 1, 2 and 3, and Ordinance § 2.33.

With regard to the interplay between charter and ordinance provisions, town charters trump town ordinances. The Rhode Island Supreme Court has found that:

> [o]rdinances are inferior in status and subordinate to the laws of the state; an ordinance that is inconsistent with a state law of general character and state-wide application is invalid. Similarly, town ordinances are subordinate to the provisions of the respective town charters. The provisions of a town charter are the organic law of the town with respect to municipal affairs. Since the state statutes and the state constitution constitute the organic law of the state and ordinances inconsistent therewith are invalid, it follows that ordinances that are inconsistent with provisions of the charter are illegal and inferior to the provisions of the charter.

*Borromeo*, 367 A.2d at 713 (internal citations omitted.) Therefore, in situations where an ordinance conflicts or is inconsistent with a charter provision, the charter provision prevails.

Allegations of animus aside, it appears to the Court that, like many cities and towns in Rhode Island, in 2005 the Town of North Smithfield faced a fiscal situation where it desired to reduce spending and costs in order to avoid imposing a more substantial tax increase on its residents. As part of the budget process, the Town Council and Town Administrator looked to the departments to make cuts and found that opportunity by eliminating the position of the DPW

Director. The parties disagree about whether the DPW position was eliminated or whether the department was restructured and responsibilities shifted, but ultimately this is not a material dispute.

The Town Charter requires a Department of Public Works to be headed by a full-time director. Charter, Article X, § 1. Defendants' actions in eliminating the DPW Director position violate this clear and unambiguous charter provision. Moreover, the Charter does not permit the Town Council to reorganize the DPW in the manner that it did. While Article IV, § 8 gives the Town Council the power to make departmental changes, it explicitly states that it may only "create, change and abolish departments, offices and agencies *other than those established by this charter*" and it "*may not discontinue or assign to any other department, office or agency, any function or duty assigned by this charter to a particular department, office or agency*[.]"(emphasis added.) Therefore, Article IV, § 8 specifically excludes DPW, a Charter-established department, from this type of reorganization. In fact, it supports the Charter's mandate that the structure of the DPW with a full-time director cannot be changed or modified.

Defendants further rely on Charter Article X, § 3, which allows the Town Council to set the DPW Director's compensation, to argue that they did not intend to eliminate the Charter-based DPW position, but only to reduce the Director's salary in order to reduce expenses. While this provision does allow the Town Council to set the Director's salary, it cannot set that salary at an amount that would negate the full time nature of the Charter-mandated position. It is disingenuous for the Town Council to assert that it did not technically eliminate the position since it allotted a one dollar per year salary when it knows well that it could never fill a full time position at that pay rate. Therefore, the Court finds that reducing the salary of a position to one dollar annually for a job mandated to be a full-time position is tantamount to eliminating the

position. That Charter provision does not justify Defendants' actions or act as a defense to disregarding Article X, § 1.

Because the Court concludes that Defendants violated the Charter when they *de facto* eliminated the Charter-mandated position of DPW Director, Mr. Kaczorowski's Motion for Summary Judgment on Count I is GRANTED; Defendants' Motion for Summary Judgment on Count I is DENIED.

### 2. Age Discrimination Under RICRA - Count II

In Count II of his Complaint, Mr. Kaczorowski alleges age discrimination, in violation of the Rhode Island Civil Rights Act, because Defendants' stated reasons for terminating him were mere pretext and that they actually terminated him based on his age. Defendants counter that, presuming he can set forth a prima facie case, Mr. Kaczorowski has failed to produce any evidence that his termination was based on his age. The Court agrees.

The United States Supreme Court has set forth a burden-shifting method to analyze a claim for discriminatory disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under the *McDonnell Douglas* analysis, a plaintiff must establish a prima facie case, which in turn gives rise to an inference of discrimination. The employer then must state a legitimate, nondiscriminatory reason for its decision. If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination." *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003) (internal citations omitted). A plaintiff establishes a prima facie case by demonstrating that: (1) he is a member of a protected class; (2) he was performing his job at a level that rules out the possibility that he was fired for inadequate job performance; (3) he suffered an adverse job action; and (4) his employer sought a replacement with roughly

equivalent qualifications. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 (1st Cir. 1994) (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965 (1992). The First Circuit has held that proving a prima facie case in a discrimination action is "not onerous." *Id.* at 15 n.4.

Because Mr. Kaczorowski was over forty years old, was adequately performing in his position, was terminated, and was replaced by a younger person, the Court finds that Mr. Kaczorowski has met his burden of proving a prima facie case under the first step of the *McDonnell Douglas* analysis. Defendants must then articulate a non-discriminatory reason. In this case, they allege that they terminated Mr. Kaczorowski for budgetary reasons. Satisfied that the record is clear that this is a legitimate reason, the Court looks to Mr. Kaczorowski who must show by a preponderance of the evidence that that reason is a pretext and the real reason is age based.

Despite Mr. Kaczorowski's assertions that there are disputed issues regarding pretext, the Court can find no evidence that assigning the younger Head of the Parks and Recreation Department Director with the DPW Director duties was age related. The fact that the DPW Director position was eliminated, but the Head of the DPR assumed the duties of the DPW Director after the Town Council terminated Mr. Kaczorowski does not equate to an age-based employment decision. In fact, it supports Defendants' fiscally based, non-discriminatory reason because it shows that Defendants trimmed the budget by lowering the Director's salary and plugging the hole in the DPW with an existing employee. Furthermore, the Court is not convinced that the refunding of the DPW Director at a $20,000 salary as compared to the $60,000 that Mr. Kaczorowski earned when he held the job is evidence of age discrimination. It

is clear to the Court that Mr. Kaczorowski's termination was not age based.[7] Therefore, the Court grants Defendants' Motion for Summary Judgment on Count II.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Kaczorowski's Motion for Summary Judgment (ECF No. 16) on Count I and DENIES his Motion on Counts IV and V. The Court GRANTS Defendants' Motion for Summary Judgment (ECF No. 12) on Counts II, III, IV, V and VI, and DENIES its Motion on Count I.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

October 1, 2013

---

[7] Moreover, while the fact that the Head of DPR who assumed Mr. Kaczorowski's responsibilities was younger does help Mr. Kaczorowski meet the presumption under the fourth element of the *McDonnell Douglas* prima facie case analysis, *see Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1111 (1st Cir. 1989), it is not dispositive of age discrimination. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir. 1993) ("in an age discrimination case, once the employer articulates a legitimate, nondiscriminatory reason for its decision to discharge the employee, the *McDonnell Douglas* presumption 'drops out of the picture.'").